### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

RODNEY TRUDELL,

     *Plaintiff*,               CASE NO. 1:16-cv-10441-TLL-PTM

*v.*                          DISTRICT JUDGE THOMAS LUDINGTON
                             MAGISTRATE JUDGE PATRICIA T. MORRIS

CARRINGTON MORTGAGE
SERVICES, L.L.C.,

     *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
(Doc. 14)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for judgment on the pleadings (Doc. 14) be **GRANTED** and that Plaintiff's complaint (Doc. 1, Ex. A) be **DISMISSED**.

## II.    REPORT

### A. Introduction

This mortgage foreclosure action was originally filed in the Circuit Court for the County of Midland, State of Michigan. It was removed to this Court on February 8, 2016, by Defendant Carrington Mortgage Services, L.L.C. (Doc. 1 at 1). It was referred by United States District Judge Thomas L. Ludington to the undersigned magistrate judge for all pretrial purposes on February 22, 2016. (Doc. 5). Plaintiff Rodney Trudell makes the

1

following claims: (1) wrongful foreclosure; (2) fraudulent misrepresentation; (3) slander of title; and (4) unclean hands. (Doc. 1, Ex. A, Pl.'s Compl. at 8-17). Plaintiff seeks a preliminary injunction, equitable mortgage, extinguishment of Defendant's interest in the property, damages, and other relief. (*Id.* at 17-21).

On May 27, 2016, Defendant filed the present motion for judgment on the pleadings. (Doc. 14). Plaintiff responded on June 15, 2016, (Doc. 16), and Defendant filed a reply on July 1, 2016. (Doc. 17). The motion is ready for report and recommendation without oral argument. *See* E.D. Mich. LR 7.1(f)(1).

### B. Factual Background

The property in question is commonly known as 2178 East Huckleberry Road, Sanford, Michigan 48657 ("Property"). (Doc. 1, Ex. A, Pl.'s Compl. at 2). Plaintiff alleges that he mortgaged the Property to Top Elite Financial to secure a loan of $127,228.00 ("Mortgage"). (*Id.* at 3). The Mortgage on the Property was assigned several times, ultimately landing in Defendant's portfolio.

Plaintiff asserts that after several years of making payments on the Mortgage, he "came upon hard economic times" and was "temporarily unable to meet the payment obligations" of the Mortgage. (*Id.* at 4). Plaintiff alleges that Defendants did not send a notice of default, wrongfully accelerated the debt, and "effectively nullif[ied] Plaintiff's right to cure." (*Id.*). Defendant began foreclosure proceedings on April 20, 2015 by way of notice in a Midland County newspaper. (*Id.*). Plaintiff avers that he could have paid the amount necessary to cure his pre-acceleration payment deficiency, but could not pay the

full remaining balance on the Mortgage, as would be required to cure the default post-acceleration. (*Id.* at 4-5).

Plaintiff further alleges that Defendant did not send him a Notice of Sale, and was not otherwise notified that Defendant had scheduled a foreclosure sale for the Property. (*Id.* at 5). "[H]ad he been given correct notices under the foreclosure by advertisement statute, the Mortgage and contractual standards," Plaintiff asserts that he "would have been in a much better position to preserve his interest . . . ." (*Id.*).

Plaintiff also asserts that Defendant "promised a permanent loan modification to Plaintiff, in exchange for various payments of money, and other actions to be undertaken by Plaintiff," and that Plaintiff "detrimentally relied upon, and fully complied with, Defendant's promises to grant him a permanent loan modification." (*Id.* at 7). Plaintiff alleges that he provided all requested information and documentation, and that he is "able to afford a reasonable monthly mortgage payment were Defendant to work with him in good faith to modify the loan," but that Defendant "never permanently modified Plaintiff's loan" and "instead initiated wrongful foreclosure proceedings." (*Id.*).

Plaintiff argues that Defendant's conduct violated several provisions of 12 U.S.C. 2605, *et seq.*, also known as the Real Estate Settlement Procedures Act ("RESPA"), Regulation X, 12 C.F.R. 1024.41, and Regulation Z 24 C.F.R. 3500, which require mortgage servicers to provide certain types of notice to mortgagors and prohibits foreclosure without sufficient notice, as described more fully below. (*Id.* at 8-11). Specifically, Plaintiff alleges that Defendant engaged in impermissible "dual tracking," negotiating foreclosure relief with Plaintiff while simultaneously pursuing foreclosure on

the Property. (*Id.* at 10-11). Plaintiff also alleges that Defendant foreclosed on the Property "less than 120 days" following delinquency on the Mortgage. (*Id.* at 11).

Plaintiff then argues that Defendant violated MCLA 600.3201, *et seq.*, by failing to calculate the amount due on the Mortgage and including amounts "not rightfully incurred" in the calculation. (*Id.*). Without specificity, he suggests that the violations extend further than this particular violation.

Plaintiff next asserts that Defendant violated the Truth in Lending Act ("TILA") 15 U.S.C. 1601, *et seq.*, by failing to notify him that "the Loan and/or Mortgage was sold or transferred." (*Id.* at 12). Likewise, Plaintiff claims that Defendant violated RESPA by failing to inform Plaintiff that the servicing of the Mortgage had been transferred.

Plaintiff alleges that Defendants engaged in fraudulent misrepresentation, including stating that Defendants "would not begin foreclosure proceedings while the parties were actively pursuing loan modification or other financial assistance options" with knowledge that such representation was false, and with intent that Plaintiff would rely on that representation and "refrain from defending the foreclosure of his home." (*Id.* at 13-14).

Plaintiff alleges that Defendant engaged in slander of title, without further detail. (*Id.* at 15).

Finally, Plaintiff alleges that Defendant's foreclosure of the property is barred by the doctrine of unclean hands due to Defendant's bad faith conduct, that a preliminary injunction preventing foreclosure of the property should issue, and that the Court should either grant an equitable mortgage or convert the foreclosure by advertisement into a judicial foreclosure under MCL 600.3101, *et seq.* (*Id.* at 16-21).

4

### C. Judgment on the Pleadings Standard

Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Judgment may be granted under Rule 12(c) where the movant clearly establishes that no material issue of fact requires resolution and that she is entitled to judgment as a matter of law. *See Beal v. Missouri Pacific R.R.*, 312 U.S. 45 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368, p. 518. The Court of Appeals for the Sixth Circuit has stated that a district court must consider a motion under Rule 12(c) using the same standard of review as a Rule 12(b)(6) motion to dismiss. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, L.L.C.*, 477 F.3d 383, 389 (6th Cir. 2007).

When deciding a motion to dismiss, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court has further explained that courts need not accept as true conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

When evaluating a motion for judgment on the pleadings, a court may consider: (1) "documents referenced in, or attached to, the complaint and central to the plaintiff's claims"; (2) "matters of which a court may properly take notice"; and (3) "public documents and records." *Sampson v. Blue Cross Blue Shield of Michigan*, 997 F. Supp. 2d 777, 780 (E.D. Mich. 2014) (citations omitted).

### D. Analysis

1.      **Wrongful Foreclosure - Plaintiff has not shown a defect or irregularity in the foreclosure process**

Under Michigan law, "[w]hen the redemption period expires, the purchaser of a sheriff's deed is vested with 'all the right, title, and interest' in the property." *Carmack v. Bank of New York Mellon*, No. 12–cv–11669, 2012 WL 2389863, at *2 (E.D. Mich. June 25, 2012) (quoting MCL § 600.3236). "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud or irregularity." *Overton v. Mortgage Elec. Reg. Sys.*, No. 07–725429, 2009 WL 1507342, at *1 (Mich. Ct. App. 2009).

The Michigan Court of Appeals has affirmed the holding in *Overton* even where the plaintiff filed suit before expiration of the redemption period. *Awad v. General Motors Accept. Corp.*, No. 302692, 2012 WL 1415166, at *3 (Mich. Ct. App. 2012). The court reiterated that "[u]pon the expiration of the redemption period, [the plaintiff] lost all right, title, and interest in the property and therefore, lost her standing to sue." *Id.*; *see also Williams v. Pledged Property II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012); *Kumar v. U.S. Bank Nat'l Ass'n*, No. 12–cv–12624, 2013 WL 783999, at *2 (E.D. Mich. Mar.1, 2013); *Costell v. Bank of New York Mellon*, No. 12–cv–15063, 2013 WL 317746, at *3 (E.D. Mich. Jan.28, 2013) ("The commencement of legal proceedings prior to the expiration of the redemption period does not preserve a mortgagor's standing to challenge the foreclosure sale."); *Allor v. Federal Home Loan Mort. Corp.*, No. 1212290, 2012 WL

5265738, at *2 (E.D. Mich. Oct.24, 2012); *Sylvester v. Fannie Mae*, No. 12–13186, 2012 WL 4694348, at *2 (E.D. Mich. Oct.3, 2012) ("[T]hat Plaintiff filed her suit before the redemption period expired does nothing to advance her claims"); *Chungag v. Wells Fargo Bank, N.A.*, No. 12–11073, 2012 WL 1945483, at *4 (E.D. Mich. May 30, 2012).

The Sixth Circuit has held in several unpublished decisions that the Michigan "holdings 'do[] not turn on [the] standing doctrine[]'" but that it is "more accurate to say that the 'fraud or irregularity' claims in *Overton*, *Awad*, and *Mission of Love* lacked sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale." *El-Seblani v. Indymac Mort. Servs.*, 510 F. App'x 425, 429-30 (6th Cir. 2013) (citing *Houston v. U.S. Bank Home Mort. Wisc. Serv.*, No. 11-2444, 2012 WL 5869918, at * 4 (6th Cir. Nov. 20, 2012)). The high standard referred to by the Sixth Circuit is "whether [the plaintiff] made a sufficient showing of 'fraud or irregularity' in connection with the sheriff's sale of his home to 'undo the divestment of [his] property.'" *El-Seblani*, 510 F. App'x at 429; *Houston*, 2012 WL 5869918, at *5.

The Sixth Circuit has further explained in a published opinion that "[w]hether the failure to make this showing is best classified as a standing issue or a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Conlin v. MERS*, 714 F.3d 355, 359-60 (6th Cir. 2013). Finally, the Sixth Circuit has emphasized that any alleged fraud or irregularity "'must relate to the foreclosure procedure itself.'" *Id.* at 360 (citation omitted).

In this case, the Property was sold at a sheriff's sale on May 19, 2015. (Doc. 14, Ex. D). The redemption period then expired on November 19, 2016. (Doc. 1, Ex. A6 at 5). Plaintiff alleges that Defendants engaged in fraud by way of promising a loan modification with the intention to defraud, demanding that Plaintiff resubmit his application several times, and misleading the Plaintiff as to the status of his modification request, all with the object of dissuading Plaintiff from challenging the foreclosure process. (Doc. 1, Ex. A, Pl.'s Compl. at 7). This alleged practice is sometimes referred to as "dual tracking," which has been described as "a common tactic by banks that institute foreclosure proceedings at the same time that a borrower in default seeks a loan modification." *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014) (citation omitted).

The Sixth Circuit Court of Appeals has distinguished between "oral assurances" made pursuant to negotiations about the mortgage contract, and fraud relating to the foreclosure process. *Williams*, 508 F. App'x at 468. Despite Plaintiff's attempt to blend the loan modification process and foreclosure process, case law in this district holds each process separate. "[D]ual tracking violations relate to the *loan modification* process rather than the foreclosure process," and thus even if accepted as true, Plaintiff's allegation of dual tracking cannot demonstrate a "fraud or irregularity" necessary to toll the redemption period. *Kloss*, 996 F. Supp. 2d at 585; *see also Bey v. LVN Corp.*, No. 14-13723, 2015 WL 4546752, at *11 (E.D. Mich. July 28, 2015); *Boluch v. J.P. Morgan Chase Band*, No. 14-14705, 2015 WL 1952285, at *2 (E.D. Mich. Apr. 29, 2015); *Elezaj v. U.S. Bank, Nat. Ass'n*, No. 14-CV-10485, 2014 WL 4965906, at *5 (E.D. Mich. Oct. 3, 2014).

Plaintiff also suggests that Defendant "tendered no money to the Midland County Sheriff for the purchase of the Subject Property at the foreclosure sale." (Doc. 1, Ex. A, Pl.'s Compl. at 6). MCLA § 600.3228 requires a mortgagee to purchase "fairly and in good faith" at a sale. If Plaintiff's allegations were true, such a violation might constitute fraud in the foreclosure process, perhaps sufficient enough to set aside the foreclosure if Plaintiff could demonstrate "prejudice"—namely, that she "would have been in a better position to preserve [her] interest in the property absent defendant's noncompliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 116 (Mich. 2012). *But cf. Rubin v. Fannie Mae*, 587 F. App'x 273, 276 (6th Cir. 2014) ("We are not persuaded that making an other-than-market-value bid at a sheriff's sale constitutes fraud sufficient to set aside the foreclosure."). Nevertheless, Plaintiff makes no claim as to how this allegedly inadequate sale price prejudiced him. More importantly, the sheriff's deed, (Doc. 1, Ex. A6 at 1) (describing Defendant's bid as "$58,460.00"), the auctioneer's affidavit, (*Id.* at 5) (same), and the purchaser's affidavit, (*Id.* at 10) (same), as attached to Plaintiff's complaint, baldly contradict Plaintiff's assertion that Defendant tendered no money at the sale. As such, Plaintiff's assertion lacks merit.

In addition, Plaintiff acknowledges his default on the Mortgage obligation, (Doc. 1, Ex. A, Pl.'s Compl. at 4), and does not allege that another action has been instituted to recover the debt. The Mortgage—which clearly contains a power of sale clause in paragraph 17—was properly recorded. (Doc. 14, Ex. B at 1, 7). And Defendant held the mortgage interest pursuant to a written assignment. (Doc. 14, Ex. C at 1). As such, Defendant had the right to foreclose by advertisement. The Sheriff's Deed attached to

Defendant's motion relieves any doubt that Defendant failed to comply with Michigan's notice requirements. (Doc. 14, Ex. D at 1) ("[B]y virtue of the power of sale, and pursuant to the statutes of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in the mortgage that the premises, or some part of them, would be sold . . . ."). *Accord Derbabian v. Bank of America, N.A.*, 586 F. App'x 949, 956 (6th Cir. 2014) ("[T]he sheriff's deed reflecting the foreclosure sale shows that the Derbabians were given the statutorily required notices."); *Goryoka*, 519 F. App'x at 929.

Because Plaintiff has not pointed to any fraud or irregularity in the foreclosure process whatsoever, he has failed to meet the high standard and is not entitled to any relief.

I further suggest that even if there had been a defect or irregularity in the notice of the foreclosure or the foreclosure proceeding itself, any such defect would have rendered the foreclosure voidable and not void. *See Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98, 118, 825 N.W.2d 329 (2012) ("[W]e hold that defects or irregularities in a foreclosure proceeding result in a foreclosure sale that is voidable, not void *ab initio*."); *Jackson Inv. Corp. v. Pittsfield Prod., Inc.*, 162 Mich. App. 750, 755, 413 N.W.2d 99, 101 (1987) ("A defect in notice renders a foreclosure sale voidable and not void."); *Mitan v. Fed. Home Loan Mort. Corp.*, 703 F.3d 949, 952 (6th Cir. 2012) ("Notice defects render a foreclosure voidable."). Since the sale is voidable, plaintiffs "must show that they were prejudiced by defendant's failure to comply with MCL 600.3204," i.e., "that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim*, 493 Mich. at 118.

11

Federal case law has consistently held that where plaintiffs have admitted default, received notice of default, failed to show they had the funds to outbid the highest bidder at the sale, let alone pay the entire unpaid balance owing on the loan, and shown no attempt to redeem the property, they cannot show how any alleged defects in the notice prejudiced them. *See, e.g., Harrison v. Bank of America, N.A.,* No. 12-cv-12281, 2013 WL 440163, at *4 (E.D. Mich. Jan 17, 2013); *Elson v. Deutsche Bank Nat'l Trust Co.*, No. 11-14100, 2012 WL 1902916, at *6 (E.D. Mich. May 25, 2012); *Piccirilli v. Wells Fargo Bank, N.A.*, No. 2:11-cv-10264, 2012 WL 1094333, at *7 (E.D. Mich. Mar. 30, 2012); *Caillouette v. Wells Fargo Bank, N.A.*, No. 11-cv-10204, 2012 WL 1033498, at *8 (E.D. Mich. Mar. 27, 2012).

I suggest that Plaintiff in the instant case suffers from the same failure: he has not sufficiently alleged prejudice. Here, Plaintiff has not challenged the fact that he defaulted on the loan, nor has he alleged that he ever attempted to redeem the property. Thus, even if he could show some defect, I suggest that he cannot show prejudice and cannot receive the relief he requests. I therefore suggest that Defendant's motion to dismiss be granted based on Plaintiff's lack of standing (or failure to meet the requirements of fraud or irregularity) and failure to aver the prejudice necessary to render any defect or irregularity voidable.

## 2.    RESPA

Plaintiff asserts that Defendant violated RESPA, "a consumer protection statute, which Congress passed in order to reform the real estate settlement process. The statute was intended to ensure that consumers received information about settlement costs, and to protect them from high settlement fees and the potentially abusive practices of providers."

12

*Augenstein v. Coldwell Banker Real Estate LLC*, No. 2:10-CV-191, 2011 WL 3837096, at *2 (S.D. Ohio Aug. 30, 2011).

The Court turns to Plaintiff's RESPA allegations falling under the enabling regulations. 12 C.F.R. § 1024.41 sets forth requirements for the submission, consideration, and adoption or rejection of applications for mortgage relief. "Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." *Id.* § 1024.41(a). Where a servicer provides such an option, merely "alleging a breach of RESPA duties alone does not state a claim . . . . Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages. . . . [and] the damages alleged must be damages suffered as a result of the failure to satisfy the RESPA duty at issue." *Szczodrowski v. Specialized Loan Servicing, L.L.C.*, No. 15-10668, 2015 WL 1966887, at *7 (E.D. Mich. May 1, 2015) (internal quotation marks omitted) (quoting *Claxton v. Orlans Associates, P.C.*, No. 1011813, 2010 WL 3385530, at *5 (E.D. Mich. Aug. 26, 2010)).

A party must allege that she submitted "[a] complete loss mitigation application"— *see* 12 C.F.R. § 1024.41(b)(1)—as a prerequisite for recovery under 12 C.F.R. § 1024.41(g). Failure to submit a complete loss mitigation application is fatal to claims brought under 12 C.F.R. § 1024.41(g). *See Burns v. Deutsche Bank Nat. Trust Co.*, No. 1:15-CV-264, 2015 WL 4903422, at *2 (W.D. Mich. Aug. 17, 2015) ("Section 1024.41(g) does not apply, however, because Plaintiffs do not allege that they submitted a complete loss-mitigation application more than 37 days prior to the foreclosure sale.").

Plaintiff's complaint cleverly avoids saying outright the magic words RESPA demands from those seeking relief. He says, for instance, that Defendant never told

Plaintiff he was not eligible for a loss-mitigation application, that Plaintiff never rejected any option, that Plaintiff never failed to perform any agreement or option, and that Plaintiff provided all documents Defendant requested. (Doc. 1, Ex. A, Pl.'s Compl. at 10). But Plaintiff never even suggests that Defendant *offered* a loss mitigation option, much less that Plaintiff submitted a complete loss mitigation application. Each assertion skirts the relevant requirement without actually fulfilling it. Thus, Plaintiff does not qualify for relief under § 1024.41(g). Likewise, § 1024.41(b), (c), (d), (e), (h), (i), and (j) deal with loss mitigation applications, and thus cannot offer any relief to Plaintiff.

Insofar as Plaintiff may wish to raise a claim under § 1024.41(f), that provision provides that "[a] servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless a borrower's mortgage loan obligation is more than 120 days delinquent." Plaintiff does not include, among his many allegations, the day he became delinquent on his payments, although the Notice of Default that Defendant attached to its answer, (Doc. 7, Ex. A at 1), names October 1, 2014 as the relevant day. Plaintiff indicates that the first notice of foreclosure was published in a Midland County newspaper on April 20, 2015. (Doc. 1, Ex. A, Pl. Compl. at 5). Accepting the notice of default attached to Defendant's motion as accurate, foreclosure proceedings were initiated more than 200 days after Plaintiff ceased making his payments. Therefore, no violation of § 1024.41(f) can be found.

Plaintiff's complaint is written in general language, with little connection between statutory authority and factual allegations. He asserts that Defendant failed to inform Plaintiff of "his mitigation options," did not provide Plaintiff with "direct and ongoing

14

access to servicing personnel," did not "review all of the foreclosure alternatives that may have been available to Plaintiff," and "initiated foreclosure proceedings on Plaintiff's home less than 120 days from Plaintiff's alleged delinquency." (Doc. 1, Ex. A, Pl.'s Compl. at 11). While Plaintiff makes no reference to 12 C.F.R. § 1024.40 in his complaint, it is evident that the allegations discussed here are derived from that provision. Specifically, § 1024.40 provides that

> A servicer shall maintain policies and procedures that are reasonably designed to achieve the following objectives:
> (1) Assign personnel to a delinquent borrower by the time the servicer provides the borrower with the written notice required by§ 1024.39(b), but in any event, not later than the 45th day of the borrower's delinquency.
> (2) Make available to a delinquent borrower, via telephone, personnel assigned to the borrower as described in paragraph (a)(1) of this section to respond to the borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options until the borrower has made, without incurring a late charge, two consecutive mortgage payments in accordance with the terms of a permanent loss mitigation agreement.

12 C.F.R. § 1024.40(a)(1)-(2). Subsection (b) provides that mortgage servicers must institute policies to effectuate the goals set forth in subsection (a), including:

> Functions of servicer personnel. A servicer shall maintain policies and procedures reasonably designed to ensure that servicer personnel assigned to a delinquent borrower as described in paragraph (a) of this section perform the following functions:
> (1) Provide the borrower with accurate information about:
>   (i) Loss mitigation options available to the borrower from the owner or assignee of the borrower's mortgage loan;
>   (ii) Actions the borrower must take to be evaluated for such loss mitigation options, including actions the borrower must take to submit a complete loss mitigation application, as defined in§ 1024.41, and, if applicable, actions the borrower must take to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program offered by the servicer;
>   (iii) The status of any loss mitigation application that the borrower has submitted to the servicer;

(iv) The circumstances under which the servicer may make a referral to foreclosure; and

(v) Applicable loss mitigation deadlines established by an owner or assignee of the borrower's mortgage loan or § 1024.41.

(2) Retrieve, in a timely manner:

(i) A complete record of the borrower's payment history; and

(ii) All written information the borrower has provided to the servicer, and if applicable, to prior servicers, in connection with a loss mitigation application;

(3) Provide the documents and information identified in paragraph (b)(2) of this section to other persons required to evaluate a borrower for loss mitigation options made available by the servicer, if applicable; and

(4) Provide a delinquent borrower with information about the procedures for submitting a notice of error pursuant to § 1024.35 or an information request pursuant to § 1024.36.

12 C.F.R. § 1024.40(b)(1)-(4). What Plaintiff does not acknowledge is that § 1024.40 provides no private right of action whatever. *See Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859, 871 (E.D. Mich. 2015) (discussing the regulatory history of § 1024.40 and finding no intention to create a private right of action). Plaintiff's claims arising out of § 1024.40 must also fail.

Plaintiff also attempts to raise a claim under 12 U.S.C. § 2605, which provides that mortgage servicers must notify borrowers "in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." § 2605(b)(1). The statute permits a private right of action to collect "actual damages to the borrower as the result of the failure," along with "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.* § 2605(f)(1)(A)-(B). Plaintiff, however, does not allege any failure of notice in transferring service of the Mortgage nor does he allege any particular damage resulting from Defendant's alleged § 2605 violation. *See Tasaranta v. Homecomings Fin. LLC*, No.

16

09CV1666 WQH JMA, 2009 WL 3055227, at *4 (S.D. Cal. Sept. 21, 2009). As a result, §
2605 offers no relief to Plaintiff.

### 3.    TILA: 15 U.S.C. § 1601

The Federal Truth in Lending Act requires that "new owner[s] or assignee[s]" of
mortgage debt "notify the borrower in writing of such transfer" no later than "30 days after
the date on which" the loan was sold, transferred, or assigned. 15 U.S.C. § 1641(g)(1).
Borrowers may bring actions against creditors who fail to comply with this requirement
"within one year from the date of the occurrence of the violation." *Id.* § 1640(e).

Defendant's assignment was recorded on November 17, 2014, and Plaintiff did not
institute this suit until December 3, 2015. (Doc. 14, Ex. C at 1). For this reason, Plaintiff's
TILA claim is time-barred by nearly a year.

### 4.    Fraudulent Misrepresentation

According to Plaintiff's complaint, Defendant "promised a permanent loan
modification," which Plaintiff "detrimentally relied upon." (Doc. 1, Ex. A, Pl. Compl. at
7). Plaintiff then asserts that Defendant either "knew" the representations were false or
"recklessly" made the representations, and "intended to induce" Plaintiff's reliance. (*Id.* at
14). Because Plaintiff's reliance "was justifiable" and he will suffer "[i]rreparable damage
. . . in the form of loss of all right, title and interest in and to his family home unless the
sheriff's deed is rescinded," Plaintiff seeks to set aside the foreclosure sale. (*Id.*).

Federal Rule of Civil Procedure 9(b) requires a claimant "alleging fraud" to state
"with particularity the circumstances constituting fraud," although "[m]alice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." Likewise,

Michigan law requires a plaintiff charging fraudulent misrepresentation to plead:

> (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Derbabian*, 587 F. App'x at 952 (quoting *U.S. Fid. & Guar. Co. v. Black*, 313 N.W.2d 77,

82 (1981)).

Plaintiff's allegations are entirely conclusory. His complaint essentially rattles off

the black-letter elements of fraud. Armed with only nondescript statutory jargon, Plaintiff's

claims contain no details as to any content, surrounding circumstances, or speakers of any

fraudulent statements. *See Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683

F.3d 239, 247 (6th Cir. 2012). A prayer for relief in court is not a Gregorian chant—

incantatory repetition of legal vocabulary can divine no answers.

Numerous courts in this circuit have rejected identical pleadings made by Plaintiff's

counsel for failure to state a claim upon which relief can be granted, and for failure to meet

the pleading standard required for fraud claims. *See, e.g.*, *Cherney v. Fed. Nat'l Mortgage*

*Ass'n*, No. 1:15-CV-711, 2016 WL 750352, at *5 (W.D. Mich. Feb. 26, 2016); *Phillips v.*

*Green Tree Servicing LLC*, No. 15-13582, 2016 WL 627903, at *5 (E.D. Mich. Feb. 17,

2016); *Murphy v. Nationstar Mortgage*, LLC, No. 15-CV-11246, 2015 WL 9647535, at *5

(E.D. Mich. Dec. 8, 2015), *Report and Recommendation adopted*, No. 15-11723, 2016 WL

67602 (E.D. Mich. Jan. 6, 2016); *Williams v. Mortgage Elec. Registration Sys., Inc.*, No.

CIV.A. 14-14693, 2015 WL 4635712, at *7 (E.D. Mich. July 30, 2015), *Report and*

*Recommendation adopted*, No. 14-14693, 2015 WL 5027707 (E.D. Mich. Aug. 25, 2015);

*Rimer v. Bank of New York Mellon*, No. 15-CV-11890, 2015 WL 4430292, at *5 (E.D.

Mich. July 20, 2015); *Martin v. Bank of New York Mellon Corp.*, No. 15-CV-10330, 2015

WL 7352006, at *4 (E.D. Mich. Nov. 20, 2015). Courts have also rejected numerous

complaints filed by Plaintiff's counsel which allege nearly identical claims of fraudulent

misrepresentation. *See, e.g.*, *Smith v. Nationstar Mortgage,* No. 1513019, 2015 WL

7180473, at *3 (E.D. Mich. Nov. 16, 2015); *Clark v. Ocwen Loan Servicing, LLC,* No.

1:15–CV–659, 2015 WL 6159447, at *5 (W.D. Mich. Oct. 20, 2015); *Bertschy–Gallimore*

*v. U.S. Bank Nat. Ass'n,* No. 1:15–CV–352, 2015 WL 3889260, at *6 (W.D. Mich. June

24, 2015).

      Plaintiff's fraudulent misrepresentation claim should be dismissed.

### 5.    Slander of Title

      Plaintiff generally alleges slander of title under the common law and MCL 565.108.

He seeks special damages for attorneys' fees, impairment of his home's marketability, and

loss of interest in his home, in addition to exemplary damages for indignity, humiliation,

and emotional distress. (Doc. 1, Ex. A, Pl.'s Compl. at 15).

      To plead slander of title, a plaintiff must allege that a defendant "maliciously

published false matter disparaging [a plaintiff's] title, causing [her] special damages."

*Hurst v. Federal Nat. Mortg. Ass'n*, 642 F. App'x 533, 540 (6th Cir. 2016) (internal

quotation marks omitted). Under both common law and statute, a party will not prevail

unless it can show "falsity, malice, and special damages." *Derbabian*, 587 F. App'x at 958 (quoting *B & B Inv. Grp. v. Gitler*, 229 Mich. App. 1, 581 N.W.2d 17, 20 (1998)) (internal quotation marks omitted). "Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton v. Dachille*, 186 Mich.App. 247, 263 (Ct. App. Mich. 1990).

Nothing in Plaintiff's complaint suggests that Defendant maliciously published false material disparaging Plaintiff's title. However, Plaintiff does not allege that Defendant made any false or slanderous utterance, nor does Plaintiff allege that an invalid lien was filed. Plaintiff relies only on the fact that he lost his property rights under the foreclosure process. These allegations are insufficient to state a claim. Likewise, while Plaintiff asserts special damages, he makes no effort to connect these alleged damages to Defendant's alleged conduct. These utterly threadbare assertions fail to state a claim upon which relief can be granted. *See Phillips*, 2016 WL 627903, at *5 (dismissing an identical claim raised by Plaintiff's counsel); *Upshaw v. Green Tree Servicing LLC*, No. 15-cv-13866, 2015 WL 9269136, at *5 (E.D. Mich. Dec. 21, 2015) (same); *Goodman v. Citimortgage, Inc.*, No. 15-12456, 2015 WL 6387451, at *5 (E.D. Mich. Oct. 22, 2015) (same).

Plaintiff's slander of title claim should be dismissed as well.

### 6. Declaratory Relief and Unclean Hands

Plaintiff contends that this Court should deny Defendant "the equitable relief of foreclosure" because of its "multiple instances of bad faith negotiations with Plaintiff, as

20

well as bad faith processing of his mortgage loan and/or request for modification." (Doc. 1, Ex. A, Pl.'s Compl. at 16-17).

The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, . . . [It] is rooted in the historical concept of the court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith[] [and] presupposes a refusal on its part to be the abettor of iniquity." *Rose v. National Auction Group, Inc.*, 646 N.W.2d 455, 461 (Mich. 2002) (quoting *Stachnik v. Winkel*, 230 N.W.2d 529, 532 (Mich. 1975)). When properly plead, unclean hands shields against claimants seeking to enforce "principles of *equitable* jurisprudence governing *equitable* rights." *Sorrels v. United States*, 287 U.S. 435, 450 (1932); s*ee Soto v. Wells Fargo Bank, N.A.*, No. 11-14064, 2012 WL 113534, at *4 (E.D. Mich. Jan. 13, 2012) ("[T]he 'unclean hands' doctrine does not state a cause of action.").

Where title acquired through foreclosure "was based in law (in a statute). . . . the unclean hands doctrine is inapplicable." *Mission of Love v. Evangelist Hutchinson Ministries*, No. 266219, 2007 WL 1094424, at *4 (Mich. Ct. App. April 12, 2007); *accord Beard v. HSBC Mortgage Services, Inc.*, No. 1:15-CV-1232, 2016 WL 3049310, at *6 (W.D. Mich. May 31, 2016) ("[Unclean hands] is a defense to an action in equity, not an independent cause of action to undo a foreclosure by advertisement."). Plaintiff's attempt to raise unclean hands as an affirmative claim must fail since unclean hands is a defense and "not an independent cause of action to undo a foreclosure by advertisement[.]" *Id.* Therefore, this claim should also be dismissed.

21

### 7.        Preliminary Injunction

Plaintiff moves for the issuance of a preliminary injunction or temporary restraining order to enjoin eviction proceedings Defendants might pursue against them. (Doc. 1, Ex. A, Pl.'s Compl. at 17-18). An injunction is a form of relief. Since I suggest that Plaintiff has failed to state any viable claims, Plaintiff is not entitled to any relief. Even if the elements of injunctive relief are examined, the result would be the same.

When considering whether to issue preliminary injunctive relief, a court must balance four the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). Because a preliminary injunction is "an extraordinary remedy," the movant must make a far more stringent showing of proof than that required to survive summary judgment. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Farnsworth v. Nationstar Mortgage, LLC*, 569 F. App'x 421, 425 (6th Cir. 2014). "Although no one factor is controlling," a movant who cannot demonstrate likelihood of success on the merits typically cannot attain preliminary relief. *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiff has not raised a single valid claim against Defendants, and thus has no likelihood of success on the merits. He also seems to conflate the requirements for a preliminary injunction and a temporary restraining order. Neither form of pre-trial relief is appropriate. Plaintiff's request must be denied.

22

###### 8.        Equitable Mortgage or Conversion to Judicial Foreclosure

Plaintiff suggests an equitable mortgage should issue because "[t]his Court has the authority to impose an equitable mortgage on a parcel of real property when no valid mortgage exists but some sort of lien is required by the facts and circumstances of the parties' relationship." (Doc. 1, Ex. A, Pl.'s Compl. at 19-20).

A court may grant an equitable mortgage as a remedy where "one party intended to grant a secured interest but the instrument actually transferred the property in total to the other party." *In re Sutter*, 665 F.3d 722, 728 (6th Cir. 2012). *See generally Townsend v. Chase Manhattan Mortg. Corp.*, 657 N.W.2d 741, 744 (Mich. Ct. App. 2002) ("Most equitable mortgage cases appear to involve treating what on its face is an absolute conveyance as a mortgage."). The remedy is most "appropriate" when "the underlying mortgage is void, particularly when one party received the benefits of the mortgage." *Id.*

Here, since I suggest that Plaintiff has failed to state any viable claim, the court does not need to address potential remedies. However, I note that even if Plaintiff had stated a viable claim, the remedy or equitable mortgage would not be available.

If a writing governs the relationship between parties, an equitable mortgage is typically an inappropriate remedy. *See Upshaw*, 2015 WL 9269136, at *6 ("In the present case, the parties' relationship is governed by a valid written agreement: the Mortgage. Thus, there is no basis for the Court to intervene and impose an equitable mortgage.") (citation omitted). When a writing exists, Michigan law permits abrogating the writing's requirements in favor of an equitable mortgage in only two instances: (1) When the deed is between parties "stand[ing] in a relationship of trust or guidance to the other party . . .

23

and the relationship has been abused." *Schultz v. Schultz*, 324 N.W.2d 48, 51 (Mich. Ct. App. 1982). And (2) when a creditor abuses the 'power of coercion' which he may have, by the force of circumstances, over the debtor." *Id.* (quoting *Emerson v. Atwater*, 7 Mich. 12 (1859)).

Plaintiff's argument assumes a nearly unfettered federal court power to issue any equitable relief it deems fair. The notion he propounds—that a court may fashion a lien simply because it decides that "some sort of lien is required by the facts and circumstances of the parties' relationship"—suggests just that. (Doc. 1, Ex. A, Pl.'s Compl. at 19-20). But the case he cites as support, *Eastbrook Homes, Inc. v. Treasury Department*, 296 Mich. App. 336, 352 (Mich. Ct. App. 2012), conveys a far narrower view of federal power: "[C]ourts may reform a defective instrument to reflect the parties' intent. . . . Additionally, an equitable mortgage may arise in other circumstances, for example, where a deed purports to convey a fee simple estate, but the parties intended only a mortgage. . . . Further, '[e]quity will create a lien only in those cases where the party entitled thereto has been prevented by fraud, accident, or mistake from securing that to which he was equitably entitled.'" *Id.* at 352-53 (quoting *Cheff v. Haan*, 269 Mich. 593, 598 (Mich. 1934)). Plaintiff has not alleged any accidental or mistaken transfer of land, nor has he adequately alleged fraud or irregularity in the procedure associated with the mortgage contract. Therefore, an equitable mortgage should not issue on these facts.

### E.  Conclusion

For the reasons stated above, the Court recommends that Defendant's motion for judgment on the pleadings (Doc. 14) be **GRANTED**, and that Plaintiff's complaint (Doc. 1, Ex. A) be **DISMISSED**.

### III.   <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue

raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Date:  September 27, 2016                    S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge


## **CERTIFICATION**

    I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: September 27, 2016                      By s/Kristen Castaneda
                                              Case Manager

26